# The Pittsburg and Steubenville Railroad Co. *et al.* *versus* Jones *et al.*

1. A railroad company contracted by articles for land and entered under the articles. Having failed to pay the purchase-money according to the articles, the court decreed specific performance with leave for the vendor to issue execution, if the purchase-money found to be due should not be paid at the time fixed in the decree. The money not being paid, execution was issued, under which the whole tract was sold. Before the sale the company had laid a track, &c., on a strip of the land. *Held*, that the sale vested the whole interest of the company legal and equitable, including the strip occupied by the track, &c., in the sheriff's vendee, subject to no easement by the company.

2. The court decreed that the vendor should deposit with the prothonotary a deed, to be delivered to the company on payment of the purchase-money, and ordered them to pay the purchase-money at times named in the decree; afterwards on non-payment according to that decree, the court decreed that judgment be entered for the vendor for the whole purchase-money due. Neither of these decrees vested the legal title in the company.

3. The sale upon his judgment under the decree was an election by the vendor to sell his legal as well as the company's equitable title, and was a virtual rescission of the contract.

4. The sale left in the company no easement in the strip, nor any right of way over it.

5. The company did not enter on the land adversely, nor appropriate it under its chartered powers.

6. The company entered and constructed its track as the equitable owner of the ground, and had no right to its use except as such equitable owner.

7. In affirming a judgment in ejectment against the company in favor of the sheriff's vendees, the Supreme Court ordered proceedings on the judgment to stay till there should be an opportunity to assess the damages to the owner, and to make compensation to him.

November 9th 1868. Before THOMPSON, C. J., SHARSWOOD and WILLIAMS, JJ. READ and AGNEW, JJ., absent.

Error to the District Court of *Allegheny county:* No. 67, to October and November Term 1868.

This was an action of ejectment, commenced August 20th 1866, by Alexander Jones and Thomas Jones, against The Pittsburg and Steubenville Railroad Company and others, for a piece of land containing about an acre and a quarter, being a narrow strip actually occupied by the track of the company's railroad.

9 P. F. SMITH—28

[Pittsburg and Steubenville Railroad Co. *v.* Jones.]

On the 21st of June 1854, Thomas Jones and others being the owners of a tract of land—of which that in dispute is a part—on the Monongahela river opposite Pittsburg, entered into articles of agreement with the Pittsburg and Steubenville Railroad Company, by which it was agreed that the owners would on or before the 1st of January 1855 convey the tract to the railroad company in fee; " the said parties of the first part are to deliver full and entire possession of the premises to the said party of the second part on April 1st 1855, and in the mean time, from time to time from and after the date hereof, the said party of the second part are to have the full and free use of so much and such parts of said premises as they may desire for all purposes connected in any manner with the construction of their road, or the improvements of said ground, or the erection or construction of buildings, tracks, landings, switches, &c., &c., and to start their ferries, should their work require it, before April 1st 1855." The railroad company to pay $66,000 for the tract, as follows:—$20,000 on the 1st of January 1855, and the remainder on the 1st of April 1865, with interest payable semi-annually. The company entered upon the premises. The vendors tendered a deed December 30th 1854, and afterwards the company paid $5000 of the purchase-money; but having done nothing further in fulfilment of the contract, the vendors on the 22d of June 1857 filed a bill in the District Court of Allegheny county for its specific execution. On the 5th of January 1858, the court decreed that the complainants deposit the deed with the prothonotary for the use of the defendants, to be delivered to them upon the order of the court, on the payment by the defendants to the complainants of $24,444.37, part of the purchase-money and interest, and secure the payment of the sum of $46,000 on the 1st of April 1865, with interest payable semi-annually by bond and mortgage to the complainants, &c. And that the complainants may take out execution for the money decreed to be paid, and may apply to the court for such further order as may be necessary on failure of the defendants to execute the bond and mortgage, &c. On the application of the complainants, and it appearing that the defendants had failed to comply with the order of January 5th 1858, the court, on the 8th of July 1865, decreed that judgment be entered for the complainants for $91,000, the whole amouut of the purchase-money with interest, with leave to take out execution, &c. To November Term 1865, an execution was issued on the above judgment, and the land sold to the plaintiffs in this ejectment and three others. The sheriff's deed was acknowledged December 20th 1865. Under this deed the plaintiffs took possession of all the tract except the strip in dispute.

On the trial before Hampton, P. J., the defendants gave evidence that at the time of the sheriff's sale, the railroad track was

[Pittsburg and Steubenville Railroad Co. *v.* Jones.]

laid on the strip in controversy which was used for railroad purposes, and that the defendants' railroad was in operation.

The defendants requested the court to charge the jury:—

" 1. That the plaintiffs being purchasers at a sheriff's sale on execution against a railroad company, took the land subject to the easement of the railroad company.

" 2. That it was not competent for the plaintiffs to levy upon land actually occupied by a railroad company for corporation purposes, and that a sale upon such an execution gave no title, in respect to the land so occupied, as against the railroad company, or the easement thereof.

" 3. That the remedy provided for owners of land occupied for corporation purposes by a railroad company, by the statute authorizing such owners to have the Court of Common Pleas appoint viewers to assess the damages is exclusive, and that the plaintiffs in the present instance have misconceived their remedy, and the jury should find for the defendants.

" 4. That under the pleadings and evidence in the case, the plaintiffs are not entitled to recover in this action."

The court charged:—

" Plaintiffs' counsel requests the court to charge the jury that, taking all the evidence to be true, the plaintiffs are entitled to recover.    *     *     *     *     *  ·  *     *

" It being conceded by the counsel on both sides that there is no question of fact to be submitted to the jury, the court instruct them *pro formâ* to find a verdict for the plaintiffs, subject to the opinion of the court on the questions of law raised by the counsel on both sides, which are reserved for the decision of the court in *banc.* And if the court should be of opinion that the plaintiffs are entitled to recover, then judgment to be entered on the verdict; otherwise judgment to be entered for the defendants *non obstante veredicto.*"

The jury found for the plaintiffs for an undivided third of the property in controversy, subject to the opinion of the court on the questions of law reserved. The court afterwards entered a judgment on the verdict.

The defendants removed the case to the Supreme Court, and assigned for error the refusal of the court to affirm their points, entering judgment for the plaintiffs on the verdict, and not entering judgment for the defendants *non obstante veredicto.*

*G. Shiras, Jr.* (with whom was *J. H. Hampton*), for the plaintiffs in error.—The judgment-creditor of the company could not sell the track under the execution, for it is essential to the company's corporate functions: Plymouth Railroad *v.* Colwell, 3 Wright 339. The remedy of the General Railroad Law of 1849 is exclusive, and the landowner could not proceed by ejectment.

He cited also Ammant v. Turnpike Co., 13 S. & R. 210; Leedom v. Plymouth Railroad, 5 W. & S. 266; Steiner's Appeal, 3 Casey 313.

*J. J. Kuhn* and *R. Woods*, for defendants in error.—Ejectment is substituted for a bill in chancery, and lies in Pennsylvania to enforce the specific performance of articles of agreement: Haun v. Norris, 4 Binn. 77; Vincent v. Huff, 4 S. & R. 301; Shaw v. Bayard, 4 Barr 257; Hauberger v. Root, 5 Id. 112. An habere facias on a conditional verdict can be issued only on the order of the court, who will refuse, unless it appears that the order has not been complied with: Shaw v. Bayard, 4 Barr 257. A vendor who obtains a conditional verdict and judgment in an ejectment to enforce payment of the purchase-money, becomes absolute owner on the vendee's non-compliance with the conditions of the verdict: Hewitt v. Huling, 1 Jones 35; Bradley v. O'Donnell, 4 Wright 479.

The opinion of the court was delivered, July 6th 1869, by

WILLIAMS, J.—Under the agreement with Thomas Jones and others of the 21st of June 1854, the Pittsburg and Steubenville Railroad Company took only an equitable estate in the land of which the strip in dispute, occupied as the track of its road, is part; and no other or greater estate was vested in the company or its assigns, under the proceedings in the District Court for the specific performance of the contract. It is clear that the legal title did not pass to the company under the decree of the 5th of January 1858, as by its express provisions the deed deposited with the clerk of the court for the use of the company was to be delivered only upon compliance with the terms of the decree, and under an order of the court to be made for that purpose. Nor was the legal title vested in the company by the supplemental or final decree of the 8th of July 1865. If this decree, as the counsel for the plaintiffs in error contend, is to be regarded as a judgment for the purchase-money, it can have no other or greater effect than a judgment at law, in an action founded on the contract, and in affirmance thereof, for the recovery of the purchase-money; and it is clear that such a judgment would not vest in the vendees the legal title to the land. But the supplemental decree or judgment was a lien on the company's equitable interest; and the sheriff's sale under the execution issued thereon, undoubtedly vested the whole estate, legal and equitable, in the vendees; not because the legal title was vested in the company under and by virtue of the judgment for the purchase-money, but because the vendors, by proceeding to sell the land under the execution issued thereon, elected to sell their legal as well as the company's equitable estate, and the sale upon the

judgment for the purchase-money was a virtual rescission of the contract: Love v. Jones, 4 Watts 465; Horbach v. Riley, 7 Barr 81; Vierheller's Appeal, 12 Harris 105; Bradley v. O'Donnell, 8 Casey 281. The sheriff's vendees therefore took the whole estate in the land—the company's equitable interest under the judgment and execution upon which the sale was made, and the vendors' legal title in virtue of their implied agreement to sell the whole estate which they had agreed to convey to the company. As the sheriff's sale divested the company's entire equitable estate, it follows that it no longer had any right or interest in the land whatever. The sale did not leave in the company any easement in the strip occupied by the track of its road, or any right of way over it. It was not made subject to any such easement or right of way; and the company had no easement or right of way over the ground, separate and distinct from its equitable ownership of the land, to which the sale could have been subject. The company did not enter on the land adversely to the owners, nor did it appropriate it under the power conferred by its charter. It entered upon the land and constructed and used the track as the equitable owner of the ground, and it never had any right to its use other than as such equitable owner, and therefore it could not possibly acquire any easement independent of its ownership of the land. It is clear, then, that the sheriff's vendees took the whole title to the land, and that they did not take it subject to any easement, or right of the company to use any part of it for the track of its road. Neither as against the former or the present owners has the company made any legal or valid appropriation of the land for the purposes authorized by its charter. The equitable title acquired from the former owners, under which the company constructed the track, was, as we have shown, divested by the sheriff's sale; and since then, it is not pretended that, as against the present owners, the company or its assigns have made any appropriation of the land for the use of the road. But under the provisions of its charter, the company has the undoubted right to appropriate it and to acquire a right to its use upon making compensation to the owners for the damages sustained thereby. As the land is indispensably necessary to the company, and as it has the undoubted right to appropriate it, under the provisions of its charter, on making compensation therefor, it seems to us but just and equitable that, while we affirm the judgment, we should order all proceedings thereon to be stayed for such reasonable time as may be necessary to enable the company, in case it cannot agree with the owners as to the amount of compensation for the use and occupancy of the land, to make application to the proper court, for the appointment of viewers to assess the damages which they may sustain thereby. We have no doubt in regard to our authority to make the order

or of its propriety under the circumstances of this case, and if any precedent be necessary it will be found in the case of O'Hara *v.* The Pennsylvania Railroad Co., 2 Grant 243, where a similar order was made by the court below with the implied, if not the express, approval of this court. A writ of possession pending the proceedings for the assessment of damages might greatly embarrass the plaintiffs in error in conducting the operations of their road, and be detrimental to the interests of the public, whose necessities compel them to use the railroad for the purposes of transportation and travel, and be of no substantial benefit to the defendants in error. But they are clearly entitled to the possession of the land, or to damages for its use and occupation, by the company and its assigns. And if the plaintiffs in error fail to institute the proper proceedings for the assessment of damages, within the time allowed for the purpose, then the defendants in error will be at liberty to proceed on the judgment.

And now, to wit, July 6th 1869, it is ordered that the judgment in this case be affirmed, and that all proceedings thereon be stayed for sixty days after the return of the record to the court below; and it is further ordered that if the plaintiffs in error shall, within the said period, agree with the defendants in error upon the amount of compensation for the use and occupancy of the land described in the writ, or, upon failure to agree, shall make application to the proper court for the appointment of viewers to assess the damages sustained by the owners, by the taking of the said land by the Pittsburg and Steubenville Railroad Company for the use of the said company and its assigns, then the plaintiffs in error, the defendants below, shall have leave to apply to the court below for such further stay of proceedings on the said judgment as may be reasonable and proper in order to complete the proceedings for the assessment of the said damages.

And it is further ordered that upon the payment of the damages which may be so assessed or agreed upon by the parties and upon payment of the costs in this case, that the said plaintiffs in error, the defendants below, shall have leave to apply to the court below for an order for the perpetual stay of proceedings on said judgment; and it is further ordered that if the plaintiffs in error, the defendants below, shall fail to agree with the defendants in error, the plaintiffs below, upon the amount of compensation for the use of said land, or to make application to the proper court for the appointment of viewers to assess the damages as

aforesaid, within the said period of sixty days, that then the said defendants in error, the plaintiffs below, shall be at liberty to issue a writ of *habere facias possessionem* on the said judgment.